1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

STEVEN M. SMITH,

11
Plaintiff,

12
v.

13
CAROLYN W COLVIN,

14
Defendant.

15

CASE NO. 13-cv-6082 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

16      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

17  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

18  Magistrate Judge and Consent Form, Dkt. No. 6; Consent to Proceed Before a United

19  States Magistrate Judge, Dkt. No. 7). This matter has been fully briefed (*see* Dkt. Nos.

20  18, 21, 22).

21      After considering and reviewing the record, the Court finds that the ALJ did not

22  err by failing to credit fully plaintiff's allegations and testimony, as the ALJ noted, for

23  example, that plaintiff provided inconsistent statements regarding his drug and alcohol

24

use. Similarly, the ALJ did not commit harmful error during his evaluation of the medical evidence, noting, in part, that doctors relied on plaintiff's self-reports and his reported minimal or lack of alcohol and drug consumption, which the ALJ properly found less than credible.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, STEVEN M. SMITH, was born in 1965 and was 42 years old on the amended alleged date of disability onset of October 24, 2008 (*see* AR. 12, 289-95, 296-302). Plaintiff did not complete high school, but did obtain his GED (AR. 59).   Plaintiff has work experience as a timber mill worker and worked for one month as a file clerk (AR. 329-38).  Plaintiff claims both jobs ended because of his medical conditions (*id.*).

According to the ALJ, plaintiff has at least the severe impairments of "polysubstance dependence, major depressive disorder/bipolar disorder, status post surgeries; bilateral hearing impairment, anxiety disorder (not otherwise specified), mild degenerative disc disease of the cervical spine, lumbar spine strain, mild degenerative joint disease of the right knee, and osteoarthritis of the right shoulder status post surgeries (20 CFR 404.1520(c) and 416.920(c))" (AR. 15).

At the time of the hearing, plaintiff and his wife of three months were living at a friend's residence and sleeping on the couch (AR. 53, 64).

1

## PROCEDURAL HISTORY

2

Plaintiff presents the procedural history as follows:

3

4

Plaintiff, Steven M. Smith ("Smith") protectively filed applications for Social Security and Supplemental Security Income (SSI) disability benefits on March 20, 2009, alleging that he has been disabled since October 15, 2005.[1]  His applications were denied initially and on reconsideration and then by an Administrative Law Judge; the Appeals Council then remanded his case for a new hearing, and a hearing was held before Administrative Law Judge Michael Gilbert ("the ALJ") on March 6, 2012. (AR. 35-88). On July 23, 2012, the ALJ issued a decision in which he found that Smith was not disabled. (AR. 9-34). Smith requested review by the Appeals Council which, on October 24, 2013, denied his request for review, leaving the decision of the ALJ as the final decision of the Commissioner. (AR. 1-5). A timely Complaint was filed in Federal District Court.

5

6

7

8

9

10

(Plaintiff's Opening Brief, Dkt. No. 18, p. 2).  Defendant has stipulated to the

11

accuracy of the procedural history (*see* Dkt. No. 21, p. 2).

12

13

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or

14

not the ALJ properly evaluated plaintiff's testimony; (2) Whether or not the ALJ properly

15

evaluated the medical evidence; (3) Whether or not the ALJ properly determined that

16

plaintiff's impairments did not meet Listing 12.04 in the absence of drug abuse and

17

alcoholism ("DA&A"); (4) Whether or not the ALJ properly assessed plaintiff's residual

18

functional capacity ("RFC") in the absence of DA&A; and (5) Whether or not the ALJ

19

erred by basing his step five finding on a RFC assessment that did not include all of

20

plaintiff's limitations (*see* Dkt. No. 18, p. 1).

21

22

---

23

[1] (AR. 12, 289-302).  At his first hearing, Smith amended his alleged disability onset date to October 24, 2008 (AR. 12).  Smith also had a prior application for disability benefits which was initially denied less than 12 months prior to the current application, and which therefore could be reopened "for any reason," but the ALJ failed to even mention this prior application. (AR. 340); 20 C.F.R. § 416.1488 (2014).

24

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

(1)     **Whether or not the ALJ properly evaluated plaintiff's testimony**.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

The ALJ failed to credit fully plaintiff's allegations in part based on a finding that they were inconsistent with the medical evidence (*see* AR. 21-22). For example, the ALJ noted that although plaintiff "continued to endorse neck pain in December 2008, he had no mid-line tenderness and his neck was described as supple with normal range of motion" (*see* AR. 21 (*citing* AR. 541)). Similarly, the ALJ noted that despite alleging

back pain, on December 4, 2008, his back was normal on inspection and non-tender; and his extremities were non-tender with normal range of motion (*see id.* (*citing* AR. 493-94)). Regarding plaintiff's mental health allegations, the ALJ noted that on February 17, 2009, Dr. Alan F. Javel, M.D., observed that plaintiff presented "as being in no acute distress and displayed a normal affect with a slightly depressed mood" (AR. 21 (*citing* AR. 522)). Similarly, the ALJ noted that on March 12, 2009, plaintiff "was described as a 'pleasant gentleman in no apparent distress' with a 'fairly good' mood" (*see id.* (*citing* AR. 529)). The ALJ also noted that on April 30, 2009, plaintiff reported that he stopped taking his prescribed medication, because it was not helping him sleep, but other than that he reported "doing okay otherwise" (*see* AR. 22 (*citing* AR. 586)). The ALJ also noted that chart notes from a May 13, 2010 office visit with Dr. Lorraine Barton-Haas, M.D. indicate that plaintiff "presented with a bright affect, spoke in an articulate, coherent manner, and demonstrated no psychomotor slowing or agitation" (*see id.* (*citing* AR. 720)). As noted by the ALJ, a progress note from August 17, 2011 indicates that plaintiff "appeared 'happy and stable' with his new girlfriend" (*see id.* (*citing* AR. 738)). Similarly, as noted by the ALJ, a progress note from August 30, 2011 indicates that plaintiff presented "smiling ear to ear" (*see id.* (*citing* AR. 739)). The ALJ also noted that on July 25, 2011, plaintiff appeared "stable at this time even though not on treatment" (*see id.* (*citing* AR. 710)). The Court concludes that the ALJ's finding that plaintiff's allegation of disabling symptoms are inconsistent with the treatment record is a finding based on substantial evidence in the record as a whole.

Although plaintiff argues that an ALJ cannot properly fail to credit fully plaintiff's allegations based solely on objective medical evidence, the ALJ here provided other rationale for failing to credit fully plaintiff's allegations and testimony. *See Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton v. Bowen*, 799 F.2d 1407 (9th Cir. 1986)).

If an ALJ rejects the testimony of a claimant once an underlying impairment has been established, the ALJ must support the rejection "by offering specific, clear and convincing reasons for doing so." *Smolen, supra*, 80 F.3d at 1284 (*citing Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993)); *see also Reddick, supra*, 157 F.3d at 722 (*citing Bunnell, supra*, 947 F.2d at 343, 346-47). The Court notes that this "clear and convincing" standard recently was reaffirmed by the Ninth Circuit. *See Garrison v. Colvin*, 759 F.3d 995, 1015 n.18 (9th Cir. July 14, 2014) ("The government's suggestion that we should apply a lesser standard than 'clear and convincing' lacks any support in precedent and must be rejected"). As with all of the findings by the ALJ, the specific, clear and convincing reasons also must be supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

When failing to credit fully plaintiff's allegations and testimony, the ALJ relied in part on plaintiff's activities that were inconsistent with his alleged disabling limitations regarding his shoulder, neck and back, noting specifically that "despite reports of debilitating pain in his shoulder, the claimant reported playing basketball with some children in June 2009 (Basketball is a game that even a layperson would recognize

requiring significant bilateral shoulder dexterity)" (AR. 23 (*citing* Exhibit 12F/28, *i.e.*, AR. 608)). This reason is supported by substantial evidence in the record and also is a proper credibility factor. *See Smolen, supra*, 80 F.3d at 1284 (citations omitted).

Most important, however, is the ALJ's reliance on plaintiff's inconsistent reporting regarding his periods of sobriety. Not only does the ALJ rely on this factor when failing to credit fully plaintiff's credibility, but also when failing to credit fully some of the medical opinions, *see infra*, section 2. For example, as noted by the ALJ, plaintiff testified at his March 6, 2012 hearing that he has been clean and sober since April 14, 2010 with no relapses (*see* AR. 16, 23, 64). At his hearing, plaintiff also testified that he had not used any drugs since 2008, including marijuana (*see* AR. 65). Subsequently at his hearing, plaintiff testified that he "had from May 2005 until I believe it was March 2009 before I relapsed," further specifying that he had over three and a half years sober during the specified time period (AR. 73–74).

In contrast to plaintiff's testimony that he had been clean and sober from May, 2005 until March, 2009, in November, 2005 plaintiff reported drinking alcohol "occasionally" (AR. 552; *see also* AR. 73–74). In contrast to plaintiff's 2012 testimony that after his relapse he had been clean and sober since April, 2010, with no relapses, plaintiff indicated on July 6, 2011 that he had a relapse of alcohol use in March, 2011, "due to divorce proceedings" (AR. 725-26; *see also* AR. 64).

Similarly, in contrast to plaintiff's testimony that he had not used any marijuana since 2008, he informed Dr. Keith Krueger, Ph.D. on September 21, 2010 that he used marijuana "only 3 times in the past year" (*see* AR. 682; *see also* AR. 65). Likewise,

1  plaintiff indicated on July 6, 2011 that he had been using marijuana daily "until 2 months

2  ago" (AR. 726). Although plaintiff argues for a different interpretation of this treatment

3  record, suggesting that plaintiff meant that he had been abstaining from marijuana until

4  March, 2011, then, used marijuana daily until May, 2011, the ALJ's interpretation of this

5  record is supported by substantial evidence. In addition, this is not the only contradiction

6  relied on by the ALJ regarding plaintiff's marijuana use, as plaintiff informed Dr.

7  Krueger in September, 2010 that he had used marijuana "3 times in the past year,"

8  contradicting plaintiff's interpretation that plaintiff had not used marijuana prior to

9  March, 2011 (AR. 682).

10

11        For the reasons stated and based on the record as a whole, the Court concludes that

12  the ALJ's finding that plaintiff's testimony and statements in the record regarding his

13  substance abuse and periods of sobriety are not credible is a finding based on substantial

14  evidence in the record. The Court also concludes that this finding supports the ALJ's

15  failure to credit fully plaintiff's allegations and testimony regarding his limitations.

16        For the reasons stated and based on the record as a whole, the Court concludes that

17  the ALJ provided clear and convincing reasons for failing to credit fully plaintiff's

18  allegations and testimony regarding his limitations. The Court also concludes that the

19  ALJ's findings regarding plaintiff's credibility are supported by substantial evidence in

20  the record as a whole. Therefore, the Court finds no harmful error in the ALJ's

21  determination regarding plaintiff's credibility.

22

23

24

(2)      **Whether or not the ALJ properly evaluated the medical evidence.**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Although the ALJ found that plaintiff met the criteria for Listing 12.04 of the listing of impairments, the Social Security Act prohibits the award of disability benefits when drug addiction and/or alcoholism is a contributing factor material to the determination of disability. *See* 42 U.S.C. §§ 423 (d)(2)(C), 1382c(a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). As noted by the Ninth Circuit, the key factor in determining whether or not "'alcoholism or drug addiction is a contributing factor material to the determination of disability' is [if] an individual would still be found disabled if [he] stopped using alcohol or drugs." *Sousa*, *supra*, 143 F.3d at 1245 (*quoting* 20 C.F.R. § 404.1535(b)(1)). Here, the ALJ found that plaintiff's use of drugs and alcohol

"is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use" (*see* AR. 29).

A.      Dr. David J. Reynolds, Ph.D., non-examining medical expert

As noted by the ALJ, Dr. Reynolds relied on plaintiff's claims of sobriety in reaching his opinion that plaintiff met the criteria for Listing 12.04.C in the listings of impairments (*see* AR. 24). However, as found by the ALJ, and upheld by this Court, *see supra*, section 1, the plaintiff's claims of sobriety during the relevant period of time are not fully credible. The ALJ included the following discussion in his written opinion:

> Dr. Reynolds testified that it was important for him to see that the claimant was clean and sober and agreed that his opinion depended upon the veracity of the claimant's statements to providers. Unfortunately, Dr. Reynolds failed to identify specific evidence of drug and alcohol use in the record that calls the claimant's veracity into question. If he had recognized those inconsistencies in the record, it is almost certain that Dr. Reynolds would have reached a different conclusion about the severity of the claimant's depression. As Dr. Reynolds testified, the claimant's marijuana use during the period would have exacerbated his depression and "would have been far and away the reason why the antidepressants didn't work and haven't worked very well in this case." Dr. Reynolds went on to testify that marijuana use interferes with antidepressant medications and renders them ineffective. In light of the materiality of the claimant's substance abuse, I find Dr. Reynolds' opinion that the claimant meets the criteria for listing 12.04. C is completely undermined by the claimant's inconsistent and incredible statements regarding his substance abuse. The testimony at [the] hearing on this point is very clear. Dr. Reynolds did not appear to think that the claimant's drug use was an ongoing concern. In short, there is preponderant evidence that supports that had the claimant ceased abusing drugs and alcohol his antidepressants would have worked or reduced his symptoms to at least a level consistent with the residual functional capacity found herein.

(AR. 24).

1    Although plaintiff contends that the "evidence of record supports Dr. Reynolds'

2    conclusion that [plaintiff] 'had three whole years clean and sober from May 2005 to May

3    2008,'" (*see* Dkt. No. 18, p. 4 (*citing* AR. 50)), this assertion is belied by plaintiff's own

4    report on July 6, 2011, that he had used marijuana "daily until 2 months ago" (*see* AR.

5    726), and is contradicted by the indication in the record that in November, 2005 plaintiff

6    reported drinking alcohol "occasionally" (AR. 552). Plaintiff also argues that "the

7    evidence also supports [plaintiff's] testimony that he was clean and sober between April

8    2010 and the date of his hearing in March 2012" (*see* Dkt. No. 18, p. 4 (*citing* AR. 65)),

9    even though he indicated to a treatment provider that he was daily using marijuana until

10   May 2011 (*see* AR. 726) and despite the fact that plaintiff informed Dr. Krueger on

11   September 21, 2010 that he used marijuana "3 times in the past year" (*see* AR. 682).

12   Plaintiff also had indicated on July 6, 2011 that he had a relapse of alcohol use in March,

13   2011, "due to divorce proceedings" (AR. 725-26). Plaintiff himself argues in his reply

14   brief that he "used marijuana daily between March 2011 and May 2011," thus completely

15   contradicting his argument that the evidence supports his testimony that he was clean and

16   sober between April, 2010 and March, 2012 (Dkt. 22, p. 2 (*citing* AR. 726)). Therefore,

17   the Court concludes that plaintiff's arguments are contradicted by the record and are

18   wholly unpersuasive. The Court also concludes that the ALJ's finding that Dr. Reynolds'

19   assessment that plaintiff had three whole years clean and sober with only "three months

20   of relapse, and then clean and sober after that" was an inaccurate assessment is a finding

21   based on substantial evidence in the record as a whole (*see* AR. 24, 50).

1    In contrast to plaintiff's assertion regarding the speculative nature of the ALJ's

2    finding that had Dr. Reynolds recognize the inconsistencies regarding plaintiff's drug and

3    alcohol use in the record "it is almost certain that Dr. Reynolds would have reached a

4    different conclusion about the severity of the claimant's depression," the Court concludes

5    that this too is a finding based on substantial evidence in the record as a whole (*see* AR.

6    24).

7         For example Dr. Reynolds testified that had plaintiff been using marijuana

8    heavily, which he noted plaintiff had a history of doing, "it would have exacerbated the

9    depression" (AR. 51). Dr. Reynolds indicated his opinion that it was "really very

10   important to see that he was clean and sober [and] at least from the medical records it

11   says he was" (*see id.*). Dr. Reynolds also testified that marijuana "definitely" interferes

12   with antidepressant drugs, specifying as follows: "I absolutely know that marijuana use

13   undermines the effect of an antidepressant" (AR. 52). Dr. Reynolds also opined that

14   marijuana use "would have been far and away the reasonable explanation why the

15   antidepressants didn't work" (AR. 51). This testimony by Dr. Reynolds strongly indicates

16   that had he known that plaintiff was using marijuana during the relevant period of time,

17   Dr. Reynolds would have opined that the marijuana use was the "reasonable explanation

18   why the antidepressants didn't work" as opposed to opining that plaintiff had an

19   intractable type of depression that was resistant to treatment by antidepressants and was

20   therefore of listing–level severity. Therefore, the record substantiates the ALJ's findings

21   regarding the opinions of Dr. Reynolds. *See Sample, supra*, 694 F.2d at 642 (the ALJ

22   may "draw inferences logically flowing from the evidence") (*citing Beane v. Richardson*,

457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)); *cf.*

SSR 86-8, 1986 SSR LEXIS 15 at *22 (an ALJ may not speculate).

For the reasons stated and based on the record as a whole, the Court concludes that

the ALJ did not commit any harmful error during the evaluation of the opinion of Dr.

Reynolds. The ALJ's findings regarding the testimony of Dr. Reynolds are supported by

substantial evidence in the record as a whole. Furthermore, based on the record as a

whole and for the reasons stated, the Court concludes that the ALJ provided clear and

convincing reasons for failing to credit fully all of the opinions in the testimony of Dr.

Reynolds.

B.      Dr. Terilee Wingate, Ph.D., examining psychologist

Dr. Wingate examined plaintiff on three separate occasions. The ALJ gave

"significant weight to those portions of Dr. Wingate's evaluations that are based on

objective testing, specifically her opinions with respect to the claimant's cognitive

functioning," but he gave "little weight to those opinions that are based on the claimant's

self–reports," such as her opinions regarding plaintiff's social limitations, based on the

ALJ's finding that these latter opinions were based on plaintiff's self–report of symptoms

and his self–report of sobriety (*see* AR. 24 – 25). As discussed briefly below, these

findings are based on substantial evidence in the record as a whole.

Dr. Wingate first evaluated plaintiff on January 20, 2006 (*see* AR. 428 – 33). It is

clear from the record that Dr. Wingate's opinion regarding plaintiff's mild and moderate

limitations with respect to cognitive factors was based on plaintiff's performance during

the mental status examination ("MSE"), as found by the ALJ (*see* AR. 429). For example,

following Dr. Wingate's opinion regarding various limitations with respect to cognitive

factors, Dr. Wingate listed a number of results from plaintiff's MSE, including that

plaintiff "did a three-step task, serial 7's [without] error; digits 6 [forward], 4

[backwards], OK fund of info . . . . Remembered 3/3 words" (*id*.). In this section, she

also noted his responses to questions testing insight and judgment, as well as his

responses to questions regarding proverbs (*see id*.). Also as found by the ALJ, the record

from Dr. Wingate indicates that she relied at least in part on plaintiff's self-report when

determining his limitations with respect to social factors (*see id*.). Her notes following her

opinion regarding social factors include that plaintiff "has stopped visiting friends-

isolates; he no longer has interest in music or other hobbies; easily overwhelmed by

stressors" (*see id*.). Therefore, the Court concludes that the ALJ's findings that Dr.

Wingate relied on plaintiff's MSE results when forming her opinions regarding plaintiff's

limitations with respect to cognitive factors, and that she relied largely on plaintiff's self–

reports when forming her opinions with respect to social factors, both are based on

substantial evidence in the record as a whole. In addition, because the Court has upheld

the ALJ's finding that plaintiff's reports are not fully credible, *see supra*, section 1, the

Court also concludes that these findings by the ALJ provide specific and legitimate

rationale for the ALJ's failure to credit fully the January 20, 2006 opinions of Dr.

Wingate regarding plaintiff's social limitations.

Dr. Wingate also evaluated plaintiff on October 24, 2008 (*see* AR. 632 – 41).

Similar to her previous evaluation, Dr. Wingate supported her opinion regarding

plaintiff's mild to moderate limitations with respect to cognitive factors by noting various

reports from his MSE, such as his orientation to all spheres, and the fact that he "did a 3-step task, 6 digits [forward] 5 digits [backward]; serial 7's with two errors; OK fund of info, reasoning & judgment" (AR. 634). Also similar to her previous evaluation, and as found by the ALJ, Dr. Wingate relied at least in part on plaintiff's self–reports when opining regarding his limitations in social factors, noting that plaintiff "noted little social contact; he noted fear/hypervigilance/anxiety have [increased] his isolation; he's supposed to go to school for DVR but fears he can't handle it [without] [treatment]" (*id.*). Therefore, the Court concludes that the ALJ's findings regarding Dr. Wingate's reliance on MSE results for her opinions regarding cognitive factors, and her reliance on plaintiff's self–reports for her opinions regarding social factors, are based on substantial evidence in the record as a whole. In this treatment record from October, 2008, Dr. Wingate also noted plaintiff's self-report that he had consumed "no alcohol [for] 3 ½ years" (*id.*), but as noted previously, in November, 2005 plaintiff reported drinking alcohol "occasionally" (AR. 552). Therefore, the Court also concludes that the ALJ's finding that "Dr. Wingate relied on the claimant's self–report of sobriety in formulating her opinions" also is based on substantial evidence in the record as a whole. The Court also concludes that these findings provide specific and legitimate rationale for the ALJ's failure to credit fully Dr. Wingate's October 24, 2008 opinion regarding plaintiff's social limitations. The Court also notes that in this evaluation, Dr. Wingate indicated that plaintiff "could probably work if he could get intensive M. H. Tx. [Mental health treatment]" (AR. 635).

1    Finally, Dr. Wingate evaluated plaintiff on a third occasion, on September 22,

2    2009 (*see* AR. 656–65). When opining regarding the level of interference of plaintiff's

3    symptoms on his work activities, Dr. Wingate listed plaintiff's self reports (*see* AR. 657).

4    For example, regarding her opinion about plaintiff's severe depression, Dr. Wingate

5    noted that plaintiff "feels sad and depressed; he has trouble staying asleep due to

6    nightmares; he has little energy and has lost interest in activities; he has feelings of

7    hopelessness and worthlessness" (*see id.*). Similarly when opining regarding his marked

8    anxiety, Dr. Wingate noted that plaintiff was "anxious around people;" that he "has

9    racing heart rate, chest gets tight, he feels agitated; he is hypervigilant and he startles

10   easily; he panics about 1x a week" (*see id.*). When opining on plaintiff's anger and social

11   isolation, Dr. Wingate noted that plaintiff was "irritable, but he avoids people so he

12   doesn't get angry;" and, that he "tends to avoid people, has some contact with his

13   children, some friends check on him, but tends to avoid contact with them" (*see id.*). As

14   found by the ALJ, when opining specifically regarding plaintiff's functional limitations,

15   Dr. Wingate clearly relied largely on plaintiff's MSE results for her opinions regarding

16   plaintiff's mild to moderate cognitive limitations, noting that he was oriented with respect

17   to all spheres, he made an error on the first step of the three step task, but that he was able

18   to remember "6 digits forward, 5 backward, [perform] serial 3's and 7's without error'"

19   he remembered 2/4 objects after a 5 minute delay; and, that he indicated "OK judgment

20   on hypothetical situation" (AR. 659). However, regarding her opinion with respect to

21   plaintiff's mostly moderate limitations regarding social factors, Dr. Wingate indicated

22   that plaintiff "has a few friend (sic) who try to help him, but he isolates in his car; he can

go into a store to get groceries, but he avoids public interaction; he is tearful and very depressed with little ability to handle daily stressors; he showers about once per week  .  .  .  .  " (*see id*.). Therefore, the Court concludes that the ALJ' s findings that Dr. Wingate relied on plaintiff's MSE when opining regarding plaintiff's mild to moderate cognitive limitations, but relied largely on plaintiff's self-reports when opining regarding social limitations both are findings based on substantial evidence in the record as a whole. The Court also concludes that these findings entail specific and legitimate rationale for failing to credit fully Dr. Wingate's September 22, 2009 opinions regarding plaintiff's limitations with respect to social factors.

C.      Dr. John C. Lowry, D.O., examining doctor

Dr. Lowry performed a consultative examination of plaintiff on May 17, 2008, five months before the amended alleged date of disability onset (*see* AR. 468-71). The ALJ discussed the opinion from Dr. Lowry and gave significant weight to much of his opinion, finding that it was "based on objective medical evidence and [] consistent with the claimant's demonstrated abilities" (AR. 25). For example, the ALJ noted that Dr. Lowry observed no obvious pain behavior; that Dr. Lowry noted that plaintiff was polite and cooperative and made good eye contact; that plaintiff's speech had regular rate and rhythm, was non-pressured, and that plaintiff demonstrated linear thought processes on direct questioning; that Dr. Lowry noted that plaintiff was fully oriented and correctly performed digit spans both forward and backward; that plaintiff demonstrated a good fund of knowledge and showed good concentration by spelling the word "world" forward and backward, and was able to engage in abstract thinking when interpreting a proverb;

and, that based on his observations, clinical interview, and MSE, Dr. Lowry "opined that the claimant would be able to perform simple and repetitive tasks and be able to accept instructions from supervisors" (*see id.* (*citing* AR. 469-71)). However, the ALJ also included the following in his written decision:

> Dr. Lowry was uncertain as to whether or not the claimant would be able to perform work activities on a regular, consistent basis (internal citation to exhibit 4F/6). This opinion is largely based upon the claimant's self-report of symptoms and upon the fact that the claimant was not engaged in mental health treatment or taking psychotropic medications. As the record shows, the claimant is generally more functional than he alleges and does better when he is engaged in treatment and taking medications. Dr. Lowry generally found as much "if his symptoms could be addressed and reduced, it is likely that this claimant could return to the workforce on a part-time or full-time basis" (internal citation to exhibit 4F/6).

(AR. 25).

The ALJ's findings are based on substantial evidence in the record as a whole (*see* AR. 471). Dr. Lowry included the following in his functional assessment/medical source statement:

> It is unclear if [plaintiff] could perform [] his work activities on a consistent basis, maintain regular attendance in the workplace, complete a normal workday or workweek without interruptions from his psychiatric condition, or deal with the usual stress encountered in competitive work. He suffers from bipolar and depressive type symptoms, along with anxiety and is not currently receiving outpatient mental health care. He would likely benefit from this type of care in the form of therapy and/or pharmacotherapy to address his symptoms. If his symptoms could be addressed and reduced, it is likely that this claimant could return to the workforce on a part-time or full-time basis (if his physical condition allowed for this return).

(*id.*).

1    Although the ALJ did not specify every opinion addressed in this summary, based

2    on a review of the record as a whole, the Court concludes that the ALJ sufficiently set out

3    "a detailed and thorough summary of the facts and conflicting clinical evidence, stating

4    his interpretation thereof, and making findings." *See Reddick*, *supra*, 157 F.3d at 725

5    (*citing Magallanes*, *supra*, 881 F.2d at 75). Dr. Lowry indicated that these particular

6    opinions, which the Court notes are not definitive, but are ambivalent, were based in part

7    on plaintiff's description of his "bipolar and depressive type symptoms, along with

8    anxiety," as noted by the ALJ (*see* AR. 25, 471). And, as already discussed, the Court has

9    upheld the ALJ's finding that plaintiff's self-reports are not fully credible, *see supra*,

10   sections 1 and 2. In addition, these opinions also were based on plaintiff's lack of mental

11   health treatment, and as noted by the ALJ, Dr. Lowry indicated that if plaintiff's

12   symptoms could be addressed with mental health treatment and pharmacology, "it is

13   likely that this claimant could return to the workforce on a part-time or full-time basis"

14   (AR. 471). As noted already, the opinion of Dr. Reynolds supports the inference by the

15   ALJ that the reason why plaintiff's antidepressant medication did not work effectively

16   was because of plaintiff's use of marijuana, *see supra*, section 1.A.

17       For the reason stated and based on the record as a whole, the Court concludes that

18   the ALJ provided specific and legitimate rationale for failing to credit fully the

19   ambivalent opinions from Dr. Lowry and also concludes that the ALJ's findings thereby

20   are based on substantial evidence in the record as a whole.

21

22

23

24

D.      Dr. Lorraine Barton-Haas, M. D., examining doctor

Dr. Barton-Haas examined plaintiff on multiple occasions, including on April 12, 2010 and on September 16, 2011 (*see* AR. 698-706, 720-48). As noted by the ALJ, Dr. Barton-Haas noted that plaintiff reported that he stopped using marijuana completely in 2006 at his April 12, 2010 evaluation, and at his September 16, 2011 evaluation reported that he did not use any marijuana from 2005 until 2009, when he had a relapse of use of marijuana in 2009 (AR. 26). However, as noted previously, *see supra,* sections 1 and 2.A., plaintiff testified that he stopped using marijuana in 2008; indicated to a treatment provider that he was daily using marijuana until May 2011 (*see* AR. 726); and informed Dr. Krueger on September 21, 2010 that he used marijuana "3 times in the past year" (*see* AR. 682). The ALJ relied on a finding that given plaintiff's testimony and other reports in the record, "it appears the claimant was not forthcoming with Dr. Barton-Haas about his chemical dependency issues" (AR. 26).

When discussing the opinion from Dr. Barton-Haas, the ALJ noted that at "her April 12, 2010, assessment, Dr. Barton-Haas noted that the claimant had not responded well to treatment for symptoms of depression, notably his sleep disturbance, but made no note of evidence suggesting the claimant continued to drink significant amounts of caffeine (internal citation to Ar. 704)" (AR. 26). In this context, the Court notes that on February 17, 2009, Dr. Alan F. Javel, M. D. diagnosed plaintiff with, among other things, caffeine intoxication, and recommended that plaintiff "should start decaffeinated himself," noting that he was drinking "up to 100 ounces of coffee per day" (AR. 522). The ALJ also noted that Dr. Barton-Haas "noted that [plaintiff's] response to

1  medications, 'a few antidepressants at this point', seems to have been only partially

2  effective; [however], her assessment includes a diagnosis of polysubstance dependence,

3  in 'full sustained remission according to patient history' (internal citation to AR. 705)"

4  (AR. 26).

5          Regarding the opinion of Dr. Barton-Haas, the ALJ concluded as follows:

6          Dr. Barton-Haas's opinions that rely on the claimant's statements

7          regarding his sobriety are not well-founded and are given little weight.
           Notably when the claimant presented for evaluation on September 16,

8          2011, he was primarily focused on sleep disturbance issues and did not
           present with a degree of anxiety or mood changes that, in Dr. Barton

9          Haas's opinion, would be amenable to medication use (internal citation

10         to AR. 748).

11  (AR. 26).

12          Based on a review of the record as a whole, the Court concludes that the findings

13  by the ALJ are supported by substantial evidence in the record. Despite plaintiff's

14  argument that "there is no evidence that Dr. Barton-Hass relied to any significant degree

15  on any inaccurate statements by [plaintiff] regarding his sobriety," as noted by the ALJ,

16  Dr. Barton-Haas included in her diagnoses that plaintiff had a diagnosis of

17  "polysubstance dependence, **in full-sustained remission according to patient history**"

18  (AR. 705 (emphasis added)). Not only does Dr. Barton-Haas indicate specifically that she

19  found plaintiff to be in full-sustained remission because of plaintiff's self-reported

20  history, but also, as discussed multiple times within this opinion, *see supra*, sections 1

21  and 2, the ALJ properly has found that plaintiff's self-report of his sobriety and lack of

22  marijuana use is not fully credible.

23

24

1    Therefore, for the reasons stated and based on the record as a whole, the Court

2    concludes that the ALJ provided specific and legitimate rationale for any failure to credit

3    fully the opinions of Dr. Barton-Haas. The Court finds no harmful error in the ALJ's

4    assessment of her treatment record or opinions.

5        E.    Dr. Keith Krueger, Ph.D., examining doctor

6    Dr. Krueger examined plaintiff on September 21, 2010 (*see* AR. 680-89). The ALJ

7    gave some weight to the opinion from Dr. Krueger, noting that his "opinion that the

8    claimant is mildly to moderately impaired in his cognitive abilities is based upon the

9    claimant's performance on the mental status examination [MSE] and is consistent with

10   the medical evidence as a whole" (AR. 26). This finding by the ALJ is based on

11   substantial evidence in the record as a whole. The Court notes that Dr. Krueger's opinion

12   regarding plaintiff's mild limitation in his ability to understand, remember and follow

13   simple instructions is based on plaintiff's performance on the digit span aspect of the

14   MSE, as Dr. Krueger explicitly indicated: "On Digit Span, at 37th %ile" (AR. 683).

15   Similarly, regarding the opinion by Dr. Krueger that plaintiff suffered from mild

16   limitation in his ability to exercise judgment and make decisions, Dr. Krueger explicitly

17   indicated his observation of "OK on MSE questions" (*see id*.).

18       Likewise, also supported by substantial evidence in the record as a whole is the

19   ALJ's finding that Dr. Krueger's "opinion that the claimant is markedly impaired in his

20   ability to interact appropriately in public and in his ability to respond appropriately to and

21   tolerate the pressures and expectations of the normal work setting is largely based upon

22   the claimant's self–report of symptoms, which, as noted above, are generally not

credible" (AR. 26). Regarding plaintiff's ability to interact appropriately in public

contacts, Dr. Krueger indicated the basis for this opinion as "Fear of crowds" (AR. 683).

As their likely were no crowds in Dr. Krueger's office, the ALJ's inference that this

opinion was based on plaintiff's self–report is based on substantial evidence in the record

as a whole. Similarly, regarding plaintiff's ability to respond appropriately to and tolerate

the pressures and expectations of the normal work setting, Dr. Krueger indicated that this

opinion was based on: "Does not see self as employable, and has not determined what it

will take; seems to be 'giving up' (based on depression, not necessarily laziness)" (*see

id.*).

When failing to credit fully the opinion of Dr. Krueger, the ALJ also indicated that

plaintiff "minimized his alcohol and marijuana use to Dr. Krueger, claiming he used

marijuana 'only 3 times' in the past year and consumed a fifth of tequila in April 2010"

(AR. 26 (*citing* AR. 682)).

For the reason stated and based on the record as a whole, the Court concludes that

the ALJ did not err in his evaluation of the opinion of Dr. Krueger. The ALJ provided

legitimate and specific rationale for any failure to credit fully opinions from Dr. Krueger.

F.     Global Assessment of Functioning ("GAF") scores

The ALJ indicated that he "thoroughly reviewed the clinical findings and

functional assessments provided by the clinicians who provided [GAF] scores, [however

he gave] the scores themselves very little weight because [he] [found] they lack probative

value in [his] analysis" (AR. 27). The ALJ provided his reason for this little weight in

that the regulations direct the ALJ to perform a function–by–function assessment of a

claimant's maximum residual functional capacity, however "as shown in the explanations accompanying the scores on the GAF scale, the scores are an attempt to rate symptoms *or* functioning" (*see id.* (*citing* The Diagnostic and Statistical Manual of Mental Disorders at 32 (4th Ed. 1994))). The ALJ found that in "this case, it is not evident from a review of the scores in the record which of these the respective clinicians were rating," and the ALJ also noted that "symptoms are an individual's 'own description' of his or her impairments" and the ALJ also indicated that he had found that plaintiff's "statements about his functioning are less than fully credible" (*see id.* (*citing* SSR 96-7p)).

The Court already has found proper the ALJ's assessment of plaintiff's credibility, *see supra*, section 1. In addition, the ALJ's finding that it was not evident from the record whether the clinicians were rating symptoms or functioning also is a finding based on substantial evidence in the record as a whole. For example, Dr. Krueger indicated the basis for his GAF score as: "[history] from file, self-report; interview impressions; MSE and test results; report of ADLs" (*see* AR. 682). Similarly, although Dr. Wingate provided her assessment of plaintiff's GAF at 45, it is not clear from her opinion the basis for this rating (AR. 635). The record directly preceding her assignment of plaintiff's GAF includes his report of decreased sleep and appetite (*see id.*). And, Dr. Wingate's assignment of a GAF of 35 on September 22, 2009 indicates that the basis for this rating includes not only plaintiff's MSE, but also his symptom severity and description of activities of daily living (*see* AR. 658). Therefore, this GAF assignment encompasses symptom severity as well as functional assessment, and also likely is based in part on plaintiff's self-report (*see id.*). Similarly, the GAF of 60, assigned by Dr. Lowry is not

accompanied by any indication of whether it is based on plaintiff's symptoms or limitations (*see* AR. 471). Finally, when providing her opinion of plaintiff's GAF of 43, Dr. Barton-Hass does not indicate the basis for this rating, but previously notes not only his diagnoses, but also his "problems with social environment, primary support group, housing problems, occupational problems [and] economic problems" (*see* AR 705). The Court finds no error in the ALJ's assessment of plaintiff's various GAF scores.

G.      Dr. Anita Peterson, Ph.D., non-examining state agency doctor

The ALJ gave significant weight to the opinion of Dr. Peterson, a state agency psychological consultant who evaluated plaintiff's records on April 29, 2009 (AR. 24 (*citing* AR. 555-72). Plaintiff complains that the ALJ erred because he gave significant weight to the opinions of Dr. Peterson without acknowledging that her opinion is entitled to less weight than the opinions of examining doctors especially because she did not review all of the medical evidence (*see* Dkt. 18, p. 12).

Although generally an examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician," *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1), here, as discussed above, the ALJ offered valid reasons for failing to credit fully the opinions of plaintiff's examining doctors that were not premised on the opinion of Dr. Peterson, *see supra*, section 2. As noted, the ALJ relied on plaintiff's potentially inaccurate representations to his examining doctors regarding his sobriety. Unlike plaintiff's examining doctors, although she did not review all the records, Dr. Peterson had the ability to review multiple treatment records for plaintiff (*see* AR. 571). For example, Dr. Peterson noted that the consultative

examination with Dr. Lowry in May, 2008 indicated that plaintiff's MSE was within normal limits (*see id.* (*citing* AR. 468-71)).

As noted by the ALJ, and as discussed previously, *see supra,* section 2.C., Dr. Lowry observed no obvious pain behavior; Dr. Lowry noted that plaintiff was polite and cooperative and made good eye contact; Dr. Lowry noted that plaintiff's speech had regular rate and rhythm, was non-pressured, and that plaintiff demonstrated linear thought processes on direct questioning; Dr. Lowry noted that plaintiff was fully oriented and correctly performed digit spans both forward and backward; Dr. Lowry noted that plaintiff demonstrated a good fund of knowledge and showed good concentration by spelling the word "world" forward and backward, and was able to engage in abstract thinking when interpreting a proverb; and, that based on his observations, clinical interview, and MSE, Dr. Lowry "opined that the claimant would be able to perform simple and repetitive tasks and be able to accept instructions from supervisors" (*see* AR. 25; *see also* AR. 469-71). Therefore, based on the record, the Court concludes that the finding from Dr. Peterson that plaintiff's MSE was within normal limits is a finding based on substantial evidence in the record as a whole (*see* AR. 571; *see also* AR. 469-71).

The record from Dr. Lowry also supports the finding from Dr. Peterson that plaintiff's activities of daily living ("ADLs") were intact (*see* AR. 571), as Dr. Lowry noted that plaintiff "reported that he is able to perform his activities of daily living" (AR. 470). Therefore, the Court concludes that this finding from Dr. Peterson regarding

1    plaintiff's intact ADLs also is supported by substantial evidence in the record (*see* AR.

2    571; *see also* AR. 470).

3           Dr. Peterson also reviewed a consultative examination from Dr. Javel in February

4    17, 2009, from which she noted, among other things, that plaintiff's affect was normal

5    (*see* AR. 571). As Dr. Javel examined plaintiff and observed that his affect was normal in

6    February, 2009, this finding by Dr. Peterson also is supported by substantial evidence in

7    the record (*see* AR. 571; *see also* AR. 522).

8           An opinion from a nonexamining doctor "may constitute substantial evidence

9    when it is consistent with other independent evidence in the record." *Tonapetyan*

10   *v.Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes, supra*, 881 F.2d at

11   752). Here, the Court concludes based on the record that the opinion from Dr. Peterson is

12   consistent with other independent evidence in the record.

13          The ALJ gave significant weight to the opinion from Dr. Peterson with a finding

14   that her "opinion is generally consistent with the weight of the medical evidence and with

15   the claimant's demonstrated abilities" (AR. 24). The Court concludes that this finding is

16   based on substantial evidence in the record as a whole.

17          If the medical evidence in the record is not conclusive, sole responsibility for

18   resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v.*

19   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855,

20   858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)).

21          For the reasons stated and based on the record as a whole, the Court concludes that

22   the ALJ did not err by relying on the opinion from non-examining doctor, Dr. Peterson.

**(3)** **Whether or not the ALJ properly determined that plaintiff's impairments did not meet Listing 12.04 in the absence of drug abuse and alcoholism (DA&A).**

In support of plaintiff's argument regarding the ALJ's determination that plaintiff's impairments did not meet Listing 12.04 in the absence of drug abuse and alcoholism, plaintiff refers to his arguments already discussed regarding the ALJ's assessment of Dr. Reynolds' opinion, *see supra*, section 2.A. Contrary to plaintiff's argument, the evidence of record does not support the analysis by Dr. Reynolds in which he concluded that plaintiff had maintained three years of sobriety, with a three month gap, and then continued, sustained sobriety, yet continued to experience symptoms so severe as to meet Listing 12.04 C (*see* Dkt. 18, pp. 21–22).

**(4)** **Whether or not the ALJ properly assessed plaintiff's residual functional capacity ("RFC") in the absence of DA&A.**

Similarly, plaintiff's argument regarding the ALJ's assessment of plaintiff's RFC are dependent on plaintiff's arguments regarding the medical evidence, and his arguments regarding plaintiff's credibility, which have been discussed already, *see supra*, sections 1 and 2. The Court has are found such arguments unpersuasive, *see supra*, sections 1 and 2.

**(5)** **Whether or not the ALJ erred by basing his step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations.**

Likewise, plaintiff's argument regarding the ALJ's step five finding also is dependent on plaintiff's previous arguments already found unpersuasive.

1

<u>CONCLUSION</u>

2

Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3

matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

4

**JUDGMENT** should be for defendant and the case should be closed.

5

Dated this 8th day of December, 2014.

6

7

8

J. Richard Creatura
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24